### IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MICHAEL REYNOLDS** | : | **CIVIL ACTION** |
| *Plaintiff* | : | |
| | : | **NO. 15-0016** |
| **v.** | : | |
| | : | |
| **MUNICIPALITY OF NORRISTOWN,** | : | |
| ***et al.*** | : | |
| *Defendants* | : | |

NITZA I. QUIÑONES ALEJANDRO, J.                              JULY 17, 2015

## MEMORANDUM OPINION

### INTRODUCTION

On February 23, 2015, the Municipality of Norristown ("Municipality"), Chief Russell J. Bono ("Chief Bono"), Officer Charles Douglass ("Officer Douglass"), Corporal Joseph Benson ("Corporal Benson"), Officer Brian Graham ("Officer Graham"), Officer Lindsay Tornetta ("Officer Tornetta"), Sergeant Tims, and Sergeant Langdon (collectively, "Defendants") filed a motion to dismiss pursuant to Federal Rules of Civil Procedure ("Rule") 12(b)(6), and 12(e), and a motion to strike under Rule 12(f). [ECF 14]. The motion to dismiss seeks the dismissal of the civil rights claims asserted against Defendants in an amended complaint filed by Michael Reynolds ("Plaintiff"), and the motion to strike seeks to have the pictures attached to the amended complaint as an exhibit stricken. [1] Plaintiff opposes the motions. [ECF 16]. The issues have been fully briefed and, therefore, are ripe for disposition.

For the reasons stated herein, the motion to dismiss is granted as to: (1) Plaintiff's § 1983 claims for false arrest, false imprisonment, and malicious prosecution asserted against

---

[1]    Although Defendants request dismissal of Plaintiff's amended complaint based upon Rule 12(b)(6) and 12(e), Defendants do not mention in their brief the text of, the standard for, or any arguments based upon Rule 12(e). Because Defendants neither not rely upon nor argue Rule 12(e), this Court deems any argument under this Rule waived and will only address the arguments for relief under Rule 12(b)(6).

Defendants Graham, Tornetta, Tims, and Langdon, (2) all claims asserted against Chief Bono, (3) the policy, custom, and failure to supervise claims asserted against the Municipality, (4) all of the conspiracy claims, (5) the Fifth Amendment claims, and (6) the claims for punitive damages asserted against the Municipality; and is denied as to: (a) the claims of inadequate medical care asserted against Defendants Graham, Douglass, Tornetta, Benson, Tims, and Langdon, (b) the claims of failure to train asserted against the Municipality, and (c) the official capacity claims against Defendants Graham, Douglass, Tornetta, Benson, Tims, and Langdon. Defendants' motion to strike is granted, in part.

## BACKGROUND

On January 5, 2015, Plaintiff filed a complaint against Defendants, [ECF 1], and an amended complaint on February 18, 2015. [ECF 12]. The amended complaint purports to assert civil rights claims under 42 U.S.C. §§1983 ("§1983") and 1985 ("§1985"), premised on violations of Plaintiff's Fourth, Fifth, and Fourteenth Amendment constitutional rights, and a state law claim for battery. In their Rule 12(b)(6) motion to dismiss, Defendants argue that the amended complaint fails to state a claim upon which relief can be granted. This Court only partially agrees.

When ruling on a motion to dismiss, a court must accept as true all relevant factual allegations in the amended complaint. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009). As gleaned from Plaintiff's amended complaint, the relevant facts are summarized as follows:

On January 13, 2013, at approximately 11:40 p.m., Plaintiff, a 46-year old black male and resident of Norristown, Pennsylvania, was driving on Markley Street in Norristown, when he was stopped by Officer Graham of the Norristown Police Department ("NPD"). (Am. Compl. ¶¶29, 30-32; Officer Graham Report (attached as Exhibit A to Am. Compl.)). As a result of the stop, Officer Graham issued Plaintiff a traffic citation for driving with a suspended operator's license,

and allowed him to continue on his way. (*Id.* at ¶¶31-33). Although no explanation was given for the stop, Plaintiff contends that it was based on a policy or custom of the NPD which allows the officers to make unwarranted traffic stops of black males driving in the Fornance, Markley, and Johnson areas of Norristown during the late evening and early morning hours. (*Id.* at ¶32).

Less than one hour later, at approximately 12:34 a.m., Plaintiff was involved in a one-vehicle accident when he collided with an exterior wall of a residence at 800 West Lafayette Street in Norristown.[2] (*Id.* at ¶¶34-35). The vehicle suffered damage to the grille, bumper, hood, and passenger side. (*Id.* at ¶35). Officer Douglass and Corporal Benson of the NPD responded to the scene of the accident and, upon approaching the vehicle, found the vehicle's engine still running and Plaintiff in the driver's seat exhibiting signs of a head injury. (*Id.* at ¶¶34-37, 50). At the time, Plaintiff was confused, disoriented, and unable to stand, walk, or respond to the officers' questions. (*Id.* at ¶¶36, 44). Plaintiff attributes these symptoms to his head injury. (*Id.* at ¶36).

Plaintiff did not receive any medical evaluation or treatment at the scene of the accident. (*Id.* at ¶52). Due to his head injury, Plaintiff was unable to communicate his medical history or consent to medical treatment. (*Id.* at ¶51). Although it is not explained how, Plaintiff contends that Officer Douglass and Corporal Benson were aware that he suffered from diabetes and hypertension. (*Id.* at ¶48).

Plaintiff further contends that pursuant to a policy or custom of the NPD, Officer Douglass and Corporal Benson were allowed to determine whether his symptoms were from an injury or intoxication and whether treatment was needed. (*Id.* at ¶¶45-47). Plaintiff also alleges that the NPD has a custom or practice of arresting black males and charging them with using PCP or drugs if they exhibit any unusual behavior and that both of these practices were implemented by Chief Bono. (*Id.* at ¶¶42-43, 46). Although no evidence of alcohol or controlled substance use was found, Plaintiff was arrested for driving under the influence and for careless driving.[3] (*Id.* at ¶42).

Officer Douglass and Corporal Benson transported Plaintiff to the NPD Detention Facility ("Detention Facility"), arriving there at approximately 1:00 a.m., (*Id.* at ¶53). Plaintiff contends that video cameras at the Detention Facility captured the images of Officer Douglass, Corporal Benson, and Sergeant Tims as they dragged him through the Detention Facility, threw him against double metal doors, stepped on him when he fell to the ground, threw him into a holding cell

---

[2]     The complaint is silent as to what transpired between the 11:40 p.m. traffic stop and the 12:34 a.m. accident.

[3]     Officer Douglass' Report (attached as Exhibit B to Am. Compl.) appears to be missing a full paragraph on page two of the narrative. Plaintiff was also charged with "driving while operating prevelege [sic] is suspended or revoked."

onto a metal cot, and allowed him to fall from the cot to the concrete floor. (*Id.* at ¶¶56-58).

Sometime before 7:00 a.m., Plaintiff claims he exhibited signs of seizure activity. (*Id.* at ¶71). According to Plaintiff, the Municipality of Norristown General Order 2002-15 ("M.G.O. 2002-15") requires officers to only provide medical evaluation or treatment to those held at the Detention Facility suffering "life-threatening" injuries. (*Id.* at ¶66; M.G.O. 2002-15 (attached as Exhibit F to Am. Compl.)). Plaintiff alleges that the NPD officers are not given adequate training to differentiate between an injury and the effects of intoxicating substances. (*Id.* at ¶¶66-67). Plaintiff contends that Officers Douglass, Graham, and Tornetta, Corporal Benson, and Sergeants Tims and Langdon all observed his condition in the early morning hours of January 14, 2013, yet failed to offer medical treatment. (*Id.*).

Almost seven hours after he arrived at the Detention Facility, at around 7:52 AM, several unidentified officers attempted to take Plaintiff out of his holding cell but were unable. (*Id.* at ¶75). Plaintiff alleges that these officers "slammed" him onto the metal cot and into the bars of his holding cell. (*Id.*). A few minutes later, a 9-1-1 call was made to Montgomery County Emergency Services ("MCES") because Plaintiff was observed suffering from a "decreased level of consciousness," the same symptom he claims he had been exhibiting since he was found at the scene of the motor vehicle accident. (*Id.* at ¶¶79, 83). Once again, Plaintiff was pulled out of his cell, this time by Officers Douglass, Graham, and Tornetta, Corporal Benson, and Sergeants Tims and Langdon, dragged down a hallway, and pushed "face first" against a wall. (*Id.* at ¶80). According to Plaintiff, all the officers watched and ridiculed him as he struggled to remain standing. (*Id.* at ¶82). Plaintiff was made to stand in this position until medical care from the MCES arrived. (*Id.* at ¶83).

At 8:02 AM, the Plymouth Ambulance Company arrived, found Plaintiff to be verbally incoherent, and transported him to Mercy Suburban Hospital ("Mercy"). (*Id.* at ¶¶83-85). At Mercy, medical professionals noted that Plaintiff was confused, suffering from an extremely elevated blood pressure, and hemorrhaging in his brain. (*Id.* at ¶85). Plaintiff was unable to provide consent for treatment, so Ms. Alison Reynolds, Plaintiff's mother, consented to the transfer from Mercy to Thomas Jefferson University Hospital ("TJU Hospital") for emergency treatment of the intracranial hemorrhage. (*Id.* at ¶87). Plaintiff was treated and released on February 1, 2013. (*Id.* at ¶88). Plaintiff claims that he still suffers from cognitive dysfunction, emotional lability, and seizures as a result of the seven-hour delay in not receiving treatment. (*Id.* at ¶89).

After Plaintiff left the Detention Facility, Corporal Benson submitted an affidavit of probable cause and testified at a preliminary hearing before District Justice Francis Lawrence regarding Plaintiff's driving while under the influence charge. (*Id.* at ¶94). Over a year later, on February 14, 2014, the charges for driving under the influence and careless driving were *nolle prossed*. (*Id.* at ¶100).

4

**LEGAL STANDARD OF REVIEW**

When considering a Rule 12(b)(6) motion to dismiss for failure to state a claim, a court "must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions." *Fowler*, 578 F.3d at 210-11. The court must determine "whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Id.* at 211 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). The complaint must do more than merely allege the plaintiff's entitlement to relief; it must "show such an entitlement with its facts." *Id.* (citations omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct[,] the complaint has [only] alleged[,] but it has not 'show[n,]'[ ]'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (alterations in original) (quoting Fed. R. Civ. P. 8(a)(2)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." *Id.* To survive a motion to dismiss under Rule 12(b)(6), "a plaintiff must allege facts sufficient to 'nudge [his] claims across the line from conceivable to plausible." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 570).

**DISCUSSION**

Plaintiff alleges claims against Defendants (1) under §1983 for false arrest, false imprisonment, malicious prosecution, excessive force, inadequate medical care, and *Monell v. Dep't of Soc. Servs.*, 463 U.S. 658, 690 (1978), ("*Monell*"); (2) under §1985 for conspiracy to violate Plaintiff's constitutional rights; and (3) under Pennsylvania state law for battery.

5

In their motion to dismiss, Defendants do not challenge Plaintiff's §1983 claims for false arrest, false imprisonment, and malicious prosecution asserted against Officer Douglass and Corporal Benson, or Plaintiff's §1983 claims for excessive force and state law battery claims asserted against Officers Douglass, Graham, and Tornetta, Corporal Benson, and Sergeants Tims and Langdon. Defendants, however, move to dismiss: (1) Plaintiff's §1983 claims against Chief Bono, Officers Douglass, Graham and Tornetta, Corporal Benson, and Sergeants Tims and Langdon because these claims are not supported by facts to show each Defendant's personal involvement; (2) the *Monell* liability claims against Chief Bono and the Municipality since these claims are supported with only conclusory allegations; (3) Plaintiff's conspiracy claims under §1983 or §1985(3) because no facts have been alleged to show an agreement existed to constitute a conspiracy; (4) the Fifth Amendment due process clause claims since this clause does not apply to state officials; (5) the claims against the Defendants in their official capacity because these claims are redundant of municipal entity claims; and (6) the punitive damages claims against the municipality and the individual Defendants, in their official capacities, because these claims are barred as a matter of law. Each of Defendants' arguments will be addressed *ad seriatim*.

## I.      Plaintiff's §1983 Claims against Chief Bono, Officers Douglass, Graham, and Tornetta, Corporal Benson, and Sergeants Tims and Langdon

In the amended complaint, Plaintiff asserts §1983 claims against Defendants, in both their individual and official capacities, for failing to provide adequate treatment for his head injury, for effectuating a false arrest, malicious prosecution, and for false imprisonment, using excessive force, and committing battery. For the sake of clarity, these contentions will be discussed separately.

### a. Claims of Inadequate Medical Treatment

Plaintiff alleges that Defendants violated his Fourteenth Amendment rights by failing to provide adequate medical treatment to his head injury either at the scene of the accident or the Detention Facility. Defendants move to dismiss all claims of inadequate medical care asserted against Chief Bono, Officers Douglass, Graham, and Tornetta, Corporal Benson, and Sergeants Tims and Langdon and argue that (i) Plaintiff refused medical care at the scene of the accident, and (ii) Plaintiff has not pled sufficient facts to show personal involvement by these Defendants.

Although Defendants contend that Plaintiff refused medical treatment at the scene of the accident, such contention is not supported by any facts in the amended complaint. It is well settled that on a motion to dismiss, a court may *only* take Plaintiff's well-pleaded facts as true and all inferences must be made in favor of Plaintiff. *Bell v. Cheswick generating Station,* 734 F.3d 188, 193 n.5 (3rd Cir. 2013). In the amended complaint, Plaintiff specifically pled that "[w]hile at the scene of the motor vehicle collision on January 14, 2013, [he] was not capable of understanding or communicating with respect to the requests for information concerning his medical history or for his consent to medical treatment or to have his blood drawn." (Am. Compl. ¶51). Nowhere in the amended complaint does Plaintiff allege that he "refused" medical treatment. Defendants, however, appear to rely on Plaintiff's alleged incompetence to consent to treatment as the equivalent of refusing treatment and ask this Court to make a similar conclusion and/or inference in their favor. This inference is impermissible at this stage of the pleadings since all inferences must be made in favor of Plaintiff. *Bell,* 734 F.3d at 193 n.5. Therefore, the argument is without merit.

As an alternative to the refusal of treatment argument, Defendants appear to argue that Plaintiff has not pled sufficient facts to show how Defendants were personally involved in his

7

claims of inadequate medical care. The Fourteenth Amendment's due process clause requires a police department to provide medical care to pre-trial detainees, "because [a] failure to do so amounts to punishment without the adjudication of guilt." *King v. Cnty. of Gloucester*, 302 F. App'x 92, 96 (3d Cir. 2008) (citing *Hubbard v. Taylor*, 399 F.3d 150, 164 (3d Cir. 2005) (*Hubbard I*)). In interpreting this precedent, the Third Circuit Court of Appeals applied the "deliberate indifference" standard to inadequate medical care claims under the Fourteenth Amendment. *Lenhart v. Pennsylvania*, 528 F. App'x 111, 115 (3d Cir. 2013) (citing *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 581 (3d Cir. 2003)). Thus, to plead a viable claim for inadequate medical care under §1983, a plaintiff must allege facts sufficient to show: "(i) a serious medical need, and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need." *Natale*, 318 F.3d at 582 (citing *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999)). Deliberate indifference requires that a defendant "'knows of and disregards an excessive risk to an inmate's health or safety.'" *Dominguez v. Governor of Pa.*, 574 F. App'x 63, 65-66 (3d Cir. 2014) (quoting *Natale*, 318 F.3d at 582). Pre-trial detainees may not be subjected to an "'unnecessary and wanton infliction of pain . . . as a consequence of denial or delay in the provision of adequate medical care.'" *Suarez v. City of Bayonne*, 566 F. App'x 181, 187 (3d Cir. 2014) (omissions in original) (quoting *Atkinson v. Taylor*, 316 F.3d 257, 266 (3d Cir. 2003)).

In this case, Plaintiff has alleged two possible serious medical needs: (1) his head injury; and (2) his pre-existing diabetes and hypertension. (Am. Compl. ¶59). While it appears that Defendants do not challenge the seriousness of his alleged medical conditions as pled, Defendants argue that these contentions fail because Plaintiff has not alleged which Defendant was aware of the serious medical need, when said Defendant became aware of the serious need, and what actions were taken in response. Defendants' argument is, however, without merit.

Plaintiff has not pled that all Defendants were aware that he suffered from diabetes, hypertension, or had just been in a motor vehicle accident. However, Plaintiff has pled sufficient facts to establish that Officers Douglass, Graham, and Tornetta, Corporal Benson, and Sergeants Tims and Landon (but *not* Chief Bono) were aware that Plaintiff had been arrested following a motor vehicle accident in which he suffered a head injury, and was in need of medical treatment during the seven hours he was at the Detention Facility and before he was transported to the hospital. Specifically, Plaintiff has alleged that "[d]espite the clear indications that [he] was suffering from medical conditions which rendered him physically and mentally disabled, [the Municipality] and its individual police officers[,] including Douglass, Benson, Graham, Tornetta, Tims, and Langdon[,] refused [Plaintiff] medical evaluation and treatment." (Am. Compl. ¶60). According to Plaintiff, each of these officers observed his serious medical condition "[b]etween the hours of 1:00 a.m. and 7:00 a.m.," and did nothing. (*Id.* at ¶¶72, 83). Finally, as pled, the serious medical condition that was observed by all of the officers between 1:00 and 7:00 a.m., on January 14, 2013, was the same condition for which Defendants sent Plaintiff to Mercy Hospital for treatment later that morning. (*Id.* at ¶83). Significantly, however, Plaintiff has not made these same factual allegations as to Chief Bono.

Based upon the allegations and claims for inadequate medical care against Officers Douglass, Graham and Tornetta, Corporal Benson, and Sergeants Tims and Langdon, their conduct, and all inferences derived therefrom, the facts, as pled, could constitute conduct of deliberate indifference. *See Natale*, 318 F.3d at 582-83 (reversing summary judgment and finding that the failure to give insulin-dependent inmate an insulin shot when prison officials were aware he was diabetic could constitute deliberate indifference). Therefore, the claims of inadequate medical care survive as to Officers Douglass, Graham, and Tornetta, Corporal

Benson, and Sergeants Tims and Landon. However, because Plaintiff has not pled that Chief

Bono was aware of his serious medical need or was present during his detention, this claim

against Chief Bono fails and is dismissed.

### b.   Plaintiff's §1983 claims for False Arrest, False Imprisonment, and Malicious Prosecution Claims

Plaintiff alleges claims of false arrest,[4] false imprisonment,[5] and malicious prosecution[6]

against all Defendants. In the motion to dismiss, Defendants argue that Plaintiff has not pled any

facts linking Chief Bono, Officers Graham and Tornetta, or Sergeants Tims and Langdon to his

arrest and, therefore, these claims should be dismissed as to these particular Defendants.

It is well-settled that "liability under section 1983 cannot be imposed absent personal

involvement in the alleged actions." *Surine v. Edgcomb*, 479 F. App'x 405, 407 (3d Cir. 2012)

(citing *Rizzo v. Goode*, 423 U.S. 362, 375-77 (1976)). Furthermore, an individual defendant

cannot be liable "'predicated solely on the operation of *respondeat superior*.'" *Christian v. Orr*,

512 F. App'x 242, 245 (3d Cir. 2013) (quoting *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d

Cir. 1988)). Personal involvement can be shown by allegations of personal direction or of actual

---

[4]     To state a claim for false arrest, Plaintiff must plead facts that show (1) that an arrest was made and (2) that the arrest was made without probable cause. *See James v. City of Wilkes-Barre*, 700 F.3d 675, 680 (3d Cir. 2012); *see also Straud v. Boorstein*, No. Civ. A. 10-3355, 2014 WL 2957708, at *3 (E.D. Pa. June 30, 2014) ("If an arrest never occurred, then the first element of a false arrest claim has not been established.").

[5]     "To state a claim for false imprisonment, a plaintiff must establish: (1) that [he] was detained; and (2) that the detention was unlawful." *James*, 700 F.3d at 682-83. Thus, the false imprisonment claim necessarily hinges on the disposition of the false arrest claim. *See Groman v. Twp. of Manalapan*, 47 F.3d 628, 636 (3d Cir. 1995) (reversing summary judgment for defendants, but only allowing false imprisonment claim to survive against the single officer where the false arrest claim survived); *Curry v. Yachera*, Civ. A. 14-5253, 2015 WL 1186014, at *5 n. 20 (E.D. Pa. Mar. 13, 2015) ("'[F]alse arrest and false imprisonment are essentially the same claim . . .'") (quoting *Olender v. Twp. of Bensalem*, 32 F. Supp. 2d 775, 791 (E.D. Pa. 1999)).

[6]     To plead a viable claim for malicious prosecution, a plaintiff must plead facts to support the following elements: (1) defendant initiated a criminal proceeding; (2) the criminal proceeding ended in Plaintiff's favor; (3) defendant initiated the proceeding without probable cause; (4) defendant acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered a deprivation of liberty consistent with the concept of seizure as a consequence of the legal proceedings. *Weaver v. Beveridge*, 577 F. App'x 103, 105 (3d Cir. 2014) (citing *Johnson v. Knorr*, 477 F.3d 75, 81-82 (3d Cir. 2007)).

knowledge and acquiescence. *Id.* Such allegations, however, must be made with appropriate particularity in that the complaint must allege the particulars of conduct, time, place, and person responsible. *Evancho v. Fisher*, 423 F.3d 347, 354 (3d Cir. 2005); *Rode*, 845 F.2d at 1207-08. "[A] plaintiff must plead that each Government-official defendant, *through the official's own individual actions*, has violated the Constitution." *Iqbal*, 556 U.S. at 676. (Emphasis added.).

As pled in the amended complaint, Plaintiff was arrested by Officer Douglass and Corporal Benson at the scene of the motor vehicle accident. (Am. Compl. ¶42).[7] In addition, the only member of the NPD specifically involved in Plaintiff's prosecution was Corporal Benson. Although Plaintiff asserts his false arrest, false imprisonment, and malicious prosecution claims against Chief Bono, Officers Graham and Tornetta, and Sergeants Tims and Langdon by including their names in either the count captions or the related "wherefore" clauses, he has not pled any facts to show their involvement in either the arrest or the prosecution, nor can any inference be made to implicate these Defendants in these events.[8] Under the circumstances, these claims against these named Defendants, in their official and personal capacities, are dismissed.

### c.   Plaintiff's §1983 Claims for Excessive Force Against Chief Bono

Plaintiff alleges that Chief Bono used excessive force against him. Defendant Chief Bono moves to dismiss this claim because Plaintiff fails to plead any facts that personally connect him (Chief Bono) to the incidents underlying Plaintiff's excessive force claim.

---

[7]      While Plaintiff has pled that Police Officer Graham earlier had issued him a traffic citation for driving with a suspended operator's license, Plaintiff has not alleged, nor can he, that this constitutes an arrest. (Am. Compl. ¶31).

[8]      In the numbered paragraphs under Count I, Plaintiff does baldly assert that Chief Bono and Officer Graham "arrested" Plaintiff. However, the more detailed facts contained in the "Facts" section of the amended complaint identify only Officer Douglas and Corporal Benson as participating in either Plaintiff's arrest and/or prosecution. Moreover, the Incident Report Form attached to the amended complaint as Exhibit B identifies only Officer Douglas and Corporal Benson. These pled facts, therefore, belie any notion that any of the other defendants participated in Plaintiff's arrest or prosecution.

"'[T]o state a claim for excessive force as an unreasonable seizure under the Fourth Amendment, a plaintiff must show that a [ ]seizure[ ] occurred and that it was unreasonable.'" *Gorman v. Warwick Twp.*, 2012 WL 1439076, at \*4 (E.D. Pa. Apr. 26, 2012) (quoting *Estate of Smith v. Marasco*, 430 F.3d 140, 148 (3d Cir. 2005) (quoting *Abraham v. Raso*, 183 F.3d 279, 288 (3d Cir.1999))). Plaintiff has offered no facts that place Chief Bono at the scene of the arrest or at the Detention Facility during either his arrest and/or detention. Nor are any facts pled from which it can be inferred that Chief Bono knew of the alleged excessive force used against Plaintiff, or that he directed that excessive force be used against Plaintiff. Without these necessary facts, there is no basis for excessive force claim against Chief Bono. If Chief Bono was not personally involved, only the theory of *respondeat superior* liability could possibly remain, which is impermissible, as a matter of law. *Christian*, 512 F. App'x at 245. Therefore, Plaintiff's claim of excessive force against Chief Bono is dismissed.[9]

## *II.     Plaintiff's Monell Claims: Policy or Custom*

In his amended complaint, Plaintiff alleges (1) that it is "the policy and custom of the Norristown Police Department to make unwarranted traffic stops of black males operating motor vehicles in the late night and early morning hours in the Fornance/Markley/Johnson area of Norristown." (Am. Compl. ¶32); (2) that "Municipality of Norristown General Order 2002-15, which has as its subject Detainee/Prisoner Procedures[,] does not include any provision for the medical evaluation of prisoners or detainees for other than medical conditions which appear to be 'life-threatening', which determination is left to the discretion of the arresting and/or detaining

---

[9]     At Count VIII, Plaintiff asserts a state law claim for battery. Based on Plaintiff's amended complaint, the heading for Count VIII includes Officers Douglass, Graham, and Tornetta, Corporal Benson, and Sergeants Tims and Langdon. It does not include Chief Bono. This Court determines that a reasonable reading of the amended complaint includes no state law battery claim asserted against Chief Bono. To the extent that it does, that claim is dismissed because no facts allow this Court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678-79. Any state law battery claim asserted against Chief Bono is, therefore, dismissed.

12

police officers." (*Id.* at ¶66); and (3) that it is the "custom and practice of the Norristown Police Department to arrest African[-]American males who exhibited any unusual behavior on a charge of using PCP or 'angel dust' where there was no detectible evidence of the use of alcohol or a controlled substance." (*Id.* at 42). Defendants move to dismiss these *Monell* liability claims asserted against Chief Bono and the Municipality on the basis that the allegation regarding these policies and customs are merely conclusory allegations and, as such, must be dismissed because they fail to state a claim.

It is well-settled that a municipality may not be held liable under §1983 for constitutional violations caused solely by its employees or agents under the principle of *respondeat superior*. *Monell v. Dep't of Soc. Servs.*, 463 U.S. 658, 690 (1978). Rather, a municipality may only be held liable under §1983 for monetary, declaratory, or injunctive relief where the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers. *Id.* at 694. "To satisfy the pleading standard, [a plaintiff] must identify a custom or policy, and specify what the custom or policy was." *McTernan v. City of York*, 564 F.3d 636, 658 (3d Cir. 2009) (citing *Phillips*, 515 F.3d at 232). That is, a plaintiff must allege facts to show that "(1) an unconstitutional policy or custom (2) attributable to the municipality (3) caused an official to inflict a constitutional injury upon the plaintiff." *Mahmoud v. City of Paterson*, 2015 WL 2114154, at *2 (3d Cir. May 7, 2015) (citing *Monell*, 436 U.S. at 663).

As set forth by the Third Circuit Court of Appeals:

A government policy or custom can be established in two ways. Policy is made when a "decision maker possess[ing] final authority to establish municipal policy with respect to the action" issues an official proclamation, policy, or edict. A course of conduct is considered to be a "custom" when, though not authorized by law, "such practices of state officials [are] so permanent and well-settled" as to virtually constitute law.

*Andrews v. City of Phila.*, 895 F.2d 1469, 1480 (3d Cir. 1990).

Thus, to plead a viable *Monell* claim based on policy, a plaintiff must allege facts showing that municipal policymakers established a policy which caused a municipal employee to violate a plaintiff's constitutional rights. *Monell*, 463 U.S. at 694. A plaintiff must also allege facts showing an "affirmative link" or "plausible nexus" between the policy and the alleged constitutional violation. *Bielevicz v. Dubinon*, 915 F.2d 845, 850-51 (3d Cir. 1990); *see also Carswell v. Bor. of Homestead*, 381 F.3d 235, 244 (3d Cir. 2004). The policy must exhibit deliberate indifference to the constitutional rights of those it affects. *Beck v. City of Pittsburgh*, 89 F.3d 966, 972 (3d Cir. 1996). Likewise, to assert a viable *Monell* claim premised on a custom, a plaintiff must allege facts to show "practices of state officials [that] are so permanent and well[-]settled as to virtually constitute law." *McTernan*, 564 F.3d at 658 (citation and internal quotation marks omitted) (quoting *Beck*, 89 F.3d at 971).

This Court will consider each of the policies and customs Plaintiff contends exist.

### a. Policy of Unwarranted Traffic Stops

As to Plaintiff's claims that the NPD has a policy of making traffic stops of African Americans in certain neighborhoods, Plaintiff has failed to plead sufficient facts to support that such a policy exists or that the stop effectuated that evening was "unlawful." As pled, Officer Graham stopped Plaintiff and issued him a traffic citation for driving with a suspended operator's license. Plaintiff was free to leave following the stop. Plaintiff has not alleged any facts to show any constitutional violation stemming from this incident. Without more, this *Monell* claim fails because Plaintiff has failed to plead facts to show a constitutional injury caused by this purported policy.

*b.   Municipality of Norristown General Order 2002-15 policy*

Plaintiff essentially contends that Municipality of Norristown General Order 2002-15

("M.G.O. 2002-15") is unconstitutional because it only permits treatment for "life threatening"

injuries for pretrial detainees in holding. As stated, the Fourteenth Amendment's due process

clause requires that a police department provide medical care to pretrial detainees, "because

failure to do so amounts to punishment without the adjudication of guilt." *King*, 302 F. App'x at

96 (citations omitted). Defendants Municipality and Chief Bono argue that the *Monell* claim

premised on this policy should be dismissed because it is unsupported by the facts.

The text of M.G.O. 2002-15 provides, in its relevant part:

F. Medical & Health Care Screening

> 1. Life Threatening Injuries/Ailments
> a.) Any time when it appears to an officer/PCO that a detainee is
> suffering from a life threatening injury or ailment, the officer/PCO shall
> make all attempts at seeking immediate medical attention for the
> detainee along with notifying the shift supervisor. This would include
> but not be limited to heart attacks seizures, head injuries, chest pain,
> allergic reactions and unexplainable shortness of breath.
> ***
> 2. Non-Life Threatening Injuries/Ailments
> a.) Any time when it appears to an officer/PCO that a detainee is
> suffering from a non-life threatening injury or ailment the officer shall
> immediately notify the shift supervisor.
> b.) The supervisor shall make a reasonable determination as to whether
> the detainee should receive immediate medical attention or if the matter
> can be dealt with later, in a reasonable amount of time.
> ***
> 3. If the supervisor has any doubt as to whether or not to provide medical
> attention to a detainee, County Radio will be requested to send EMS. The
> EMS provider's on-scene assessment shall be used as guidance in
> determining whether further treatment should be given immediately or not.

(M.G.O. 2002-15, May 21, 2012, p. 9).

"[I]t is a well-settled rule that when a written instrument contradicts allegations in the

complaint to which it is attached, the exhibit trumps the allegations." *Pittsburgh League of*

15

*Young Voters Educ. Fund v. Port Auth. of Allegheny Cnty.*, 2007 WL 1007968, at *5 (W.D. Pa. Mar. 30, 2007) (citing *ALA, Inc. v. CCAIR, Inc.*, 29 F.3d 855, 859 n.8 (3d Cir. 1994)). Here, a copy of the written M.G.O. policy at issue is attached to the amended complaint. Because the contents of M.G.O. 2002-15 and the allegation in the amended complaint appear to contradict each other, this Court will rely on the actual content of M.G.O. 2002-15 instead of the allegations in the amended complaint to address this claim.

A careful reading of the above-cited provisions reveals that M.G.O. 2002-15 does not support Plaintiff's argument. As stated, Plaintiff contends that the written policy "does not include any provision for the medical evaluation of prisoners or detainees for other than medical conditions that appear to be 'life-threatening,' which determination is left to the discretion of the arresting and/or detaining police officers." Plaintiff's contention, however, is directly refuted by the plain language of the written policy itself. As set forth above, the policy specifically provides procedures for "Non-Life Threatening Injuries/Ailments," under which an officer must "immediately" inform his/her supervisor that a detainee is suffering from a non-life threatening injury and then the supervisor must "make a reasonable determination as to whether the detainee should receive immediate medical attention . . . ." (M.G.O. 2002-15, p. 9).

Contrary to Plaintiff's allegations, this policy does not allow a member of the NPD, who knows of a serious medical need of a pretrial detainee, to disregard a medical need. Under this policy, an NPD officer has three options: (1) immediately treat an illness, (2) contact emergency services if the NPD officer is unable to determine the need for treatment, or (3) delay treatment only if the injury is non-life threatening and only then for a reasonable amount of time. In other words, a serious medical need must be treated, as required by the Fourteenth Amendment. Any claim asserted against the Municipality or Chief Bono based on this policy must, therefore, be

16

dismissed because Plaintiff does not plead facts that support a *Monell* liability claim and the challenged written policy is not unconstitutional.

### c. *Custom or practice of Unwarranted Arrests*

Finally, Plaintiff asserts a *Monell* claims against the Municipality and Chief Bono are premised on a custom or practice of the NPD to arrest African American males who exhibit any unusual behavior and to charge them with using PCP or "angel dust," even in the absence of any detectible evidence of the use of alcohol or a controlled substance. (Am. Compl. ¶42). Besides this conclusory statement, however, Plaintiff alleges no facts explaining how this policy was implemented, other instances in which this alleged custom was practiced, and/or how this alleged custom is a "well-settled" one. *McTernan*, 564 F.3d at 658; *see also Jordan v. Cicchi*, 428 F. App'x 195, 198 (3d Cir. 2011) (dismissing *Monell* custom claim because plaintiff only pled a single incident of an alleged custom, making it not well-settled); *Li Min v. Morris*, 445 F. App'x 574, 576 n.1 (3d Cir. 2011) (stating that, in the alternative, plaintiff's custom claim must be dismissed because only one instance of the custom was alleged which makes it not well-settled). Therefore, Plaintiff's *Monell* claims premised on an alleged custom or practice of making unwarranted arrests of African American males are dismissed.

### III.    *Plaintiff's Monell Claims: Failure to Train and Supervise*

Plaintiff also asserts that Chief Bono and the Municipality failed to provide adequate medical training to their subordinate officers. Specifically, Plaintiff alleges that "[n]either the Borough of Norristown nor Police Chief Russell Bono provided adequate training to Norristown police officers to permit those officers to recognize signs and symptoms of injury and distinguish those signs and symptoms from intoxication or the influence of controlled substances." (Am. Compl. ¶45). Defendant moves to dismiss this claim because of a lack of any factual allegations

17

on the type of training that should have been provided, and the lack of a causal relationship to the constitutional injury.

"[T]he inadequacy of police training may serve as the basis for §1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388-89 (1989). To plead a failure to train claim, Plaintiff must ordinarily allege "'[a] pattern of similar constitutional violations by untrained employees' [in order to] 'to demonstrate deliberate indifference.'" *Thomas v. Cumberland Cnty.*, 749 F.3d 217, 223 (3d Cir. 2014) (quoting *Connick v. Thompson*, --- U.S. ---, ---, 131 S. Ct. 1350, 1360 (2011)).

A plaintiff may also assert a failure to train claim premised on a single incident. To do so, a plaintiff must allege facts to show that the need to train officers must "'be so obvious, that failure to do so could properly be characterized as deliberate indifference to constitutional rights.'" *Thomas*, 749 F.3d at 223 (internal citations omitted) (quoting *City of Canton*, 489 U.S. at 390 n.10); *see, e.g., City of Canton*, 489 U.S. at 390 n.10 (explaining that an example of single-incident failure to train liability would be to give police officers a gun but not train them on the appropriate use of deadly force); *Berg v. Cnty. of Allegheny*, 219 F.3d 261, 276-77 (3d Cir. 2000) (holding that the lack of a system to double check whether a warrant for arrest was correct was such an obvious risk as to be deliberately indifferent to plaintiff's constitutional rights); *Stewart v. Kinch*, 2012 WL 6645547, at *4 (E.D. Pa. Dec. 21, 2012) (refusing to dismiss failure to train claim asserted against police department because plaintiff alleged that the township failed to discipline their officers and train them on the limits of their constitutional authority in their complaint). However, "[e]stablishing municipal liability on a failure to train claim under §1983 is difficult." *Reitz v. Cnty. of Bucks*, 125 F.3d 139, 145 (3d Cir. 1997). In fact,

it requires a plaintiff to identify "the specific training the municipality should have offered which would have prevented the deprivation of their constitutional rights." *Id.*

To plead a viable failure to supervise claim, a plaintiff must plead facts to show a failure to supervise which "reflects a policy of deliberate indifference to constitutional rights." *Wiggs v. City of Phila.*, 2014 WL 772538, at \*4 (E.D. Pa. Feb. 27, 2014) (quoting *Jewell v. Ridley Twp.*, 497 F. App'x 182, 186 (3d Cir. 2012) (citing *Montgomery v. De Simone*, 159 F.3d 120, 126-27 (3d Cir. 1998))). Deliberate indifference occurs if "1) municipal supervisors had contemporaneous knowledge of the offending incident or of a 'prior pattern of similar incidents,' and 2) the supervisors' action or inaction somehow communicated approval of the offending behavior." *Tobin v. Badamo*, 78 F. App'x 217, 219 (3d Cir. 2003) (quoting *Montgomery*, 159 F.3d at 127); *see also Langweiler v. Bor. of Newtown*, 2010 WL 5393529, at \*7 (E.D. Pa. Dec. 29, 2010) (citing *C.H. ex rel. Z.H. v. Oliva*, 226 F.3d 198, 202 (3d Cir. 2002) (*en banc*)).

Here, Plaintiff's amended complaint does not contain facts that could support a "'pattern of similar constitutional violations by untrained employees.'" The amended complaint does, however, contain enough factual specificity to state a failure to train claim under the single-incident method. That is, Plaintiff identifies with sufficient specificity the failure in the training regime: officers are not trained to differentiate a head injury from drug or alcohol use in vehicle accident victims. (Am. Compl. ¶¶45-46). Plaintiff also identifies with sufficient specificity what the training regime should have been; *to wit*: officers should "transport accident victims who exhibit signs of injury with no detectible evidence of alcohol consumption to a hospital or other facility at which a physician can examine and determine whether or not they suffer from an injury or medical condition." (*Id.* at ¶47).

Further, Defendants' failure to train claim is sufficiently analogous to the failure to train claim described by the Supreme Court in *City of Canton* to survive Defendants' motion to dismiss. In *City of Canton*, the Supreme Court opined that a municipality's failure to train its officers how to use a weapon when "city policymakers know to a moral certainty that their police officers will be required to arrest fleeing felons," constituted an example of where single-incident liability would attach because the risk of a constitutional violation was "so obvious." *City of Canton*, 489 U.S. at 390 n. 10.

Similar to the example in *City of Canton*, here "city policymakers know to a moral certainty" that their police officers will be required to respond to incidents in which persons who come into their custody have suffered serious, and sometimes life-threatening, injuries. The Fourteenth Amendment's due process clause requires a police department to provide medical care to pretrial detainees, *King*, 302 F. App'x at 96 (citation omitted), who may not be subjected to an "'unnecessary and wanton infliction of pain . . . as a consequence of denial or delay in the provision of adequate medical care'" *Suarez*, 566 F. App'x at 187 (quoting *Atkinson*, 316 F.3d at 266). Plaintiff has alleged that Defendant officers have been given the discretion to decide whether detainees suffer from a serious or life-threatening injury and whether to provide immediate medical attention. The need to train officers how to differentiate between serious head injuries and intoxication, where those officers have been given the discretion to decide whether to provide medical treatment to victims of motor vehicle accidents, is "so obvious, that the failure to do so could properly be characterized as deliberate indifference to constitutional rights." *Thomas*, 749 F.3d at 223. Like the examples described above, this failure to train could result in constitutional violations indicating deliberate indifference on the part of either Chief Bono or the Municipality. As such, Defendants' argument on this issue fails.

As to the failure to supervise claim, Plaintiff alleges that Chief Bono and the Municipality failed to "enforce a policy and practice to transport accident victims who exhibit signs of injury with no detectible evidence of alcohol consumption to a hospital or other facility at which a physician can examine and determine whether or not they suffer from an injury or medical condition." (Am. Compl. ¶47). Defendants Municipality and Chief Bono move to dismiss these claims because Plaintiff has asserted only conclusions and not facts to show Chief Bono's personal involvement. This Court agrees.

While Plaintiff asserts a "failure to train and supervise" claim, he fails to plead facts to support the supervisory portion of this assertion. Plaintiff has alleged no facts to show that Chief Bono knew of a prior pattern of similar incidents, had contemporaneous knowledge of the incident, and/or undertook any action with regards to the alleged failure to supervise. Therefore, the failure to supervise claims asserted against Chief Bono and the Municipality are dismissed for failure to state a claim.

### IV.    Plaintiff's §§1983 and 1985 Conspiracy Claims

Defendants move to dismiss Plaintiff's §§1983 and 1985 conspiracy claims. Plaintiff alleges that Defendants participated in a conspiracy to falsely arrest and imprison, maliciously prosecute, and unconstitutionally deny him medical care. Defendants argue that these claims must be dismissed because Plaintiff has not pled any fact to support an agreement between them.

To plead a viable conspiracy claim under §1983, a Plaintiff must allege facts to show a "combination, *agreement*, or understanding among all or between any of the defendants to plot, plan or conspire to carry out the challenged conduct." *Wood v. Williams*, 568 F. App'x 100, 107 (3d Cir. 2014) (emphasis added) (citing *D.R. by L.R. v. Middle Bucks Area Vocational Technical Sch.*, 972 F.2d 1364, 1377 (3d Cir. 1992)). Similarly, §1985(3) claims require the pleading of

21

facts that support an *agreement* between the alleged co-conspirators. *Lawson v. City of Coatesville*, 42 F. Supp. 3d 664, 682 (E.D. Pa. 2014) (emphasis added) (citing *Lake v. Arnold*, 112 F.3d 682, 685 (3d Cir. 1997)). "[A]llegations of conspiracy must be grounded firmly in facts; they cannot be conclusory nor can they hinge on bare suspicions and foundationless speculation." *Reed v. Harpster*, 506 Fed. App'x 109, 111 (3d Cir. 2012) (citing *Young v. Kann*, 926 F.2d 1396, 1405 n.16 (3d Cir. 1991)).

In this case, Plaintiff contention that all Defendants "worked in connection with one another and/or conspired to arrest, imprison, maliciously prosecute and deprive [Plaintiff] of needed medical evaluation and care" is merely a conclusory allegation. (Am. Compl. ¶154). Plaintiff has not pled any facts to show that Defendants conspired together or agreed to violate his constitutional rights. Plaintiff's assertions are nothing more than a "[t]hreadbare recital [ ] of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678 (citation omitted). Without more, the conspiracy claims under §§1983 and 1985(3) against Defendants are dismissed.

### V. Plaintiff's §1983 Claims for the Violation of His Fifth Amendment Rights

Plaintiff purports to assert a §1983 claim for the alleged violation of his Fifth Amendment due process rights. Defendants move to dismiss this claim because the Fifth Amendment due process clause does not apply to state actors, but rather, "restrict[s] only federal governmental action." *Nguyen v. U.S. Catholic Conference*, 719 F.2d 52, 54 (3d Cir. 1983) (citing *Pub. Utils. Comm'n v. Pollak*, 343 U.S. 451, 461 (1952)). This Court agrees.

Only the Fifth Amendment rights against self-incrimination, takings, and being placed in double jeopardy have been incorporated and applied to states through the Fourteenth Amendment. *McDonald v. City of Chi.*, 561 U.S. 742, 765 n.12 (2010). Plaintiff's amended

22

complaint does not allege facts regarding a violation of any of these three incorporated rights. Accordingly, Plaintiff's 1983 claim for the alleged violation of his Fifth Amendment due process rights is dismissed.

## VI. Plaintiff's Official Capacity Claims

Defendants argue that the claims asserted against each individual state officer in their official capacity is redundant of a claim against the Municipality as a whole and should be dismissed. Since this Court has decided other aspects of Defendants' motion to dismiss, it will limit the "official capacity" discussion to Defendants' remaining claims.[10] The Third Circuit Court of Appeals has upheld Rule 12(b)(6) dismissal of official capacity claims against individual defendants on the grounds that those claims are redundant of claims against the government entity. See, e.g., Snell v. City Of York, 564 F.3d 659 (3d Cir. 2009); Crane v. Cumberland Cnty., 64 F. App'x 838 (3d Cir. 2003). However, "dismissal for redundancy is at the court's discretion." Moore v. City of Phila., 2014 WL 859322, at *2 (E.D. Pa. Mar. 5, 2014). Furthermore, courts "have inherent authority to 'manage their own affairs so as to achieve the orderly and expeditious disposition of cases.'" Id. at *3 (quoting Link v. Wabash R.R. Co., 370 U.S. 626, 630–31 (1962)).

Accordingly and under the circumstances pled, this Court dismisses the failure to train claim asserted against Chief Bono because it is equivalent to the claim asserted against the Municipality in every respect, i.e., it is the same claim. See Moore, 2014 WL 859322, at *2-3 (dismissing official capacity claims asserted against a prison warden and prison commissioner

---

[10]     The claims which remain on the record are as follows: (1) §1983 claims for false arrest, false imprisonment, and malicious prosecution asserted against Officer Douglass and Corporal Benson in their individual and official capacities; (2) §1983 excessive force and inadequate medical care asserted against Officers Douglass, Graham, and Tornetta, Corporal Benson, and Sergeants Tims and Langdon in their individual and official capacities; (3) Monell failure to train claim asserted against the Municipality and Chief Bono in his official capacity only; and (4) state law battery claims asserted against Officers Douglass, Graham, and Tornetta, Corporal Benson, and Sergeants Tims and Langdon in their individual and official capacities.

23

for failure to train because it was redundant of the failure to train claim against the city). Besides the failure to train claim, no other claims asserted against the Municipality has survived Defendants' motion to dismiss. Thus, the remaining official capacity claims asserted against the individual police officers are not redundant of a claim against the Municipality. Furthermore, because all of the individual police officer defendants are also implicated in their individual capacity, dismissing official capacity claims would "serve no laudable purpose." *Capresecco v. Jenkintown Bor.*, 261 F. Supp. 2d 319, 322 (E.D. Pa. 2003). Those official capacity claims are not dismissed.

### VII.  Plaintiff's Punitive Damages Claims

Finally, Plaintiff attaches a request for punitive damages to all of his claims. Defendants move to dismiss the request for punitive damages attached to the claims against the Municipality and Chief Bono because punitive damages are precluded, as a matter of law, against a municipality or an officer in an official capacity. The United States Supreme Court has held that "'a municipality is immune from punitive damages under 42 U.S.C. §1983,'" because it is seen as a punishment levied against innocent taxpayers. *Smith v. Bor. of Dunmore*, 633 F.3d 176, 183 (3d Cir. 2011) (quoting *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981)). Accordingly, punitive damages assertions attached to the failure to train claim, the only remaining claim against the Municipality, are dismissed. Because no claims survive against Chief Bono, the argument against punitive damages no longer applies and is deemed moot.

### VIII.  Motion to Strike

Defendants move to strike the still photographs obtained from video footage captured by cameras at the Detention Facility from the amended complaint. Defendants argue that because

24

the photographs cannot be attached and incorporated into the pleading pursuant to Rule 10(c),[11] these photographs should be stricken from the record pursuant to Rule 12(f) as immaterial or impertinent. In his response, Plaintiff argues that Rule 10(c) allows the attachment of exhibits to a complaint, but to alleviate the Defendants' concerns with the selective attachment of still photographs, he has attached, non-electronically, a DVD copy of the videos.

Rule 12(f) allows a court to strike "any redundant, immaterial, impertinent, or scandalous matter," either *sua sponte* or by way of a party's motion. Motions to strike under Rule 12(f) are "not favored and usually will be denied unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties." *Fulton Fin. Advisors, Nat'l Ass'n v. NatCity Invs., Inc.*, 2013 WL 5635977, at *19 (E.D. Pa. Oct. 15, 2013) (quoting *Cipollone v. Liggett Grp., Inc.*, 789 F.2d 181, 188 (3d Cir. 1986)); *see also* 5C C. Wright & A. Miller, *Federal Practice and Procedure* § 1382, at 826 (3d ed. 2004).

While Defendants challenge the photographs as exhibits, Defendants do not challenge the non-electronic submission of a DVD copy of the videos. Considering that the DVD contains all of the photographs, in moving picture format, the still photographs are completely redundant of the video. Undoubtedly, the video shows more accurately and completely the events that unfolded at the Detention Facility on January 14, 2013, than do the selective still photographs. For these reasons, this Court accepts Plaintiff's compromise, strikes all still photographs taken from video at the Detention Facility from the amended complaint, and retains the DVD as a non-electronically filed exhibit.

---

[11]     Rule 10(c) states, in relevant part, that "a copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."

**CONCLUSION**

For the reasons stated herein, Defendants' motion to dismiss is granted, *in part*, and denied, *in part*. Defendant's motion to strike is granted, *in part*. An Order consistent with this Memorandum Opinion follows.

NITZA I. QUIÑONES ALEJANDRO, U.S.D.C. J.